```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

CHRIS R. MUNOZ,                  §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   CIVIL ACTION H-11-2984
                                 §
LUBY'S INC. and LUBY'S           §
RESTAURANTS LIMITED PARTNERSHIP  §
n/k/a LUBY'S FUDDRUCKERS         §
RESTAURANTS, LLC,                §
                                 §
          Defendants.            §
```

**OPINION AND ORDER COMPELLING ARBITRATION AND DISMISSING CASE**

Pending before the Court in the above referenced cause, alleging denial of a promotion as employment discrimination based on Plaintiff Chris R. Munoz's national origin/race, Hispanic, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, is Defendant Luby's Fuddruckers Restaurants, LLC's ("Luby's") motion to dismiss and to compel arbitration (instrument #3) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1.

After carefully examining all briefs submitted on the issue and the applicable law, the Court concludes that Luby's motion should be granted for reasons indicated in this document.

**Relevant Law**

The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *American Bankers*

-1-

*Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006), *quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The statute provides that when a party petitions the court to compel arbitration under a written agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  The statue "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.  Thus, . . . agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The court applies a two-step analysis when considering a motion to compel arbitration.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).  First it determines whether the parties agreed to arbitrate the dispute at issue.  *Id.*  That prong requires two determinations:  (a) whether there is a valid agreement to arbitrate between the parties; and (b) whether the dispute in question falls within the scope of that arbitration agreement. *Tittle*, 463 F.3d at 418.  These questions are decided according to

state law governing contract formation, in this case the law of Texas. *Hill*, 367 F.3d at 429; *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). If the court finds that the parties did agree to arbitrate the dispute and that the dispute falls within the scope of their agreement, in a second step the court considers whether any federal statute or policy renders the claims non-arbitrable. *Hill*, 367 F.3d at 429. "[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Id.* *See also Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)(The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."). Nevertheless, this strong federal policy favoring arbitration does not apply to the court's initial determination whether there is a valid agreement to arbitrate. *Hill*, 367 F.3d at 429. Furthermore, during this review, the court must not consider the merits of the underlying action. *Id.*

The FAA requires that an arbitration clause be in writing, but does not required that it be signed. *Perez v. Lidia Lemarroy d/b/a Joli's Orthopedic Shoes and Medical Supplies*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008), *citing* 9 U.S.C. § 2, and *inter alia Lora v. Providian Bancorp Servs.*, No. EP-05-CA-045-DB, 2005 WL 1743878, *3

(W.D. Tex. July 22, 2005. *See also In re AdvancePCS Health, LP*, 172 S.W. 3d 603, 606 n.5 (Tex. 2005)("[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties."); *In re Macy's Tex., Inc.*, 291 S.W. 3d 418, 418 (Tex. 2009)(per curiam)(("[T]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."). "[W]hether a person is bound by a contract he never signed is an issue for the court to decide," not the arbitrator. *In re Morgan Stanley & Co.*, 293 S.W. 3d 182, 192-93 (Tex. 2009). While a signature on an agreement to arbitrate is one way a party may be bound, a party may also accept an agreement by receiving and accepting the benefits of the agreement. *Id.* (and cases cited therein).

In addition, under Texas law, an employer may change the terms of an at-will employment contract if he gives notice of the change and the employee accepts the change. *Moran v. Ceiling Fans Direct, Inc.*, 239 Fed. Appx. 931, 936 (5th Cir. Sept. 6, 2007), *citing In re Halliburton Co.*, 80 S.W. 3d 566, 568 (Tex. 2002)(*citing Hathaway v. General Mills, Inc.*, 711 S.W. 2d 227, 229 (Tex. 1986)), *cert. denied sub nom. Myers v. Halliburton*, 537 U.S. 1112 (2003). The employer asserting such an alteration "'must prove that he *unequivocally* notified the employee of definite changes in employment terms.'" *Id.* (emphasis added)*, citing Hathaway*, 711

S.W. 2d at 229. Thus the employee must have both knowledge of the nature of the change and knowledge of the certainty of its imposition. *Id., citing id*. If the employer notifies an employee of the changes in the at-will contract and the employee continues to work with knowledge of the modification, the employee has accepted those changes as a matter of law. *Id., citing id*. In accord, *In re Dillard Dept. Stores, Inc.*, 198 S.W. 3d 778, 780 (Tex. 2006), *citing Halliburton* and *Hathaway*. Moreover, "'[w]hen the arbitration provision in an agreement is conspicuous, a party may not avoid its effect by asserting that he did not notice the provision or that it was not pointed out to him.'" *In re MHI Partnership, Ltd.*, No, 14-07-00851-CV, 2008 WL 2262157, *4 (Tex. App.--Houston [14th Dist.] May 29, 2008), *quoting Beldon Roofing & Remodeling Co. v. Tanner*, No. 04-97-00071-CV-1997 WL 280482, *2 (Tex. App.--San Antonio May 28, 1997).

Pursuant to Section 3 of the FAA, when all of the issues raised in a lawsuit should be submitted to arbitration, as is the case here, the court has the discretion to dismiss the action. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)(opining that "the weight of authority clearly supports dismissal of a case when all of the issues raised in the district court must be submitted to arbitration"); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 2000)(holding that :district courts have the discretion to dismiss cases in favor of

arbitration"); *Jureczki v. Banc One Texas, N.A.*, 252 F. supp. 2d 368, 379-80 (S.D. Tex. 2003).

**Defendants' Motion (#3)**

Defendants state that during Plaintiff's employment and prior to the filing of this suit, Luby's Employment Dispute Resolution Policy ("EDRP") required Luby's and each of its employees to resolve all employment-related disputes by arbitration. Ex. A to #3. Plaintiff had continuing notice of the EDRP, was given a copy of the EDRP, and of Questions and Answers regarding it. Moreover, when the EDRP was implemented, Plaintiff received a Mutual Agreement to Arbitrate ("MAA") form to sign and return to Luby's Human Resources office. Ex. B to #3; Ex. C, Paulette Gerukos' Affidavit. Exhibit B at 2 states that the purpose of the two handouts was to provide Luby's and all its employees a way in which disputes could be "resolved by binding arbitration rather than litigation in recognition of the fact that resolution of any differences in the courts is rarely cost effective for either party." The MAA further provides, "Any matter covered under this Agreement or concerning the legality or interpretation of this Agreement shall be heard and decided under the provisions and authority of the Federal Arbitration Act, 9 U.S.C. § 1 as applicable. Ex. B, "Disputes Covered." Not only does the contract provide that the FAA applies, but Luby's business of operating restaurants throughout the country involves interstate commerce and

thus supports the statute's application.  Luby's MAA stated,

> **I UNDERSTAND THAT THIS AGREEMENT IS EFFECTIVE FROM THE DATE OF MY EMPLOYMENT, OR IT IS EFFECTIVE WITHIN 5 DAYS OF RECEIVING THIS AGREEMENT OR SIGNING (WHICHEVER IS EARLIER).  I ALSO UNDERSTAND THAT IT RESTRICTS MY RIGHT TO SUE MY EMPLOYER AND APPLIES TO ANY EMPLOYMENT DISPUTE(S) INCLUDING THOSE THAT OCCURRED BEFORE THE DATE I SIGN BELOW.**

Plaintiff did not sign or return the form.

Luby's Employee Handbook (Ex. D), which is made available to all Luby's employees on the Luby's intranet and in Luby's Human Resources office, also gave Plaintiff notice of Luby's EDRP, which describes the Policy, including the binding arbitration:

> This policy will provide a private professional method outside of Luby's to settle employment related disputes.  If the dispute involves a legally protected right such as protection against disability, age, race, sex, discrimination or sexual harassment and has not been resolved internally, you or Luby's may proceed to binding arbitration.  A neutral arbitrator agreed upon by the Parties will lead the binding arbitration.

Luby's contends that having been given notice of the EDRP, the MAA, and the Employee Handbook, "Plaintiff unequivocally accepted the terms of the arbitration policy and continues to do so through his continued employment," and thus demonstrates his agreement to be bound by the provisions of the EDRP.  Moreover the EDRP and the MAA expressly encompass Plaintiff's Title VII claims.  The MAA mandates binding arbitration for all employment-related disputes and specifically includes claims for "violations of the Civil Right Act of 1964, as amended."  Ex. B, "Disputes Covered."

**Plaintiff's Response (#5)**

Supported by his own affidavit and attachments, Plaintiff argues that there is no agreement to arbitrate or, alternatively, the agreement is not enforceable because he did not sign and return the MAA form because it abridged his lawful rights. Moreover the May 2010 memorandum attached to the EDRP, MAA and Questions and Answers stated that "crewmembers involved in any current lawsuit against the Company are not required to sign" the arbitration agreement. It was his understanding that the agreement would only be effective and binding on him if he signed it. The deadline for forwarding the signed MAA form was June 11, 2010. Instead of signing and returning the form, he sent a letter to the EEOC on June 10, 2010 advising the agency that he did not intend to sign the arbitration agreement.

Plaintiff maintains that the arbitration agreement is not valid because (1) he did not accept it, (2) it lacks "mutual assent," (3) the agreement was not executed, no less delivered with the intent that it be mutual and binding, and (4) it lacks mutuality of obligation or consideration. The specific and exclusive manner in which the agreement would become binding on Plaintiff was by his signing it; his failure to do so meant there was no agreement. Furthermore, the offer lapsed on June 12, 2010, since the deadline for signing and returning the arbitration agreement was June 11, 2010 according to the memorandum. To form

a binding contract there must be a "meeting of the minds," i.e., mutual understanding and assent; here there was no such thing as Defendants simply emailed the agreement to Plaintiff, he read it and disagreed with its terms, and he did not sign it.  He points out that Employee Handbooks are generally not contracts of employment and lack the status of contracts.  *Zimmerman v. HE Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991)("Texas law 'genera[lly] reject[s] the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.'  Employee handbooks and manuals do not create contracts when the parties have not expressly agreed that the procedures contained in these materials are binding. [citations omitted]"), *cert. denied*, 502 U.S. 1991).[1]  Furthermore the handbook was not even delivered to Plaintiff, but only made available to employees online or in Luby's Human Resources office.  Nor was there any consideration given or exchanged nor mutuality of obligation (since the obligation to arbitrate is unilateral to Plaintiff)[2] for the arbitration agreement.  He further contends that continuation of employment at-will is not sufficient

---

[1] The Court points out that the agreement here is the separate agreement to arbitrate, not the Employee Handbook.

[2] Plaintiff argues that the Introduction of the agreement begins in the singular, "I agree to arbitrate," and has five sentences and obligations imposed on Plaintiff only.

consideration for an arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 228 (Tex. 2003).[3]

**Luby's Reply (#8)**

Luby replies that Plaintiff's signature was not required for him to be bound by the MAA because it explicitly and conspicuously states, "**I UNDERSTAND THAT THIS AGREEMENT IS EFFECTIVE FROM THE DATE OF MY EMPLOYMENT, OR IT IS EFFECTIVE WITHIN 5 DAYS OF RECEIVING THIS AGREEMENT OR SIGNING IT (WHICHEVER IS EARLIER**)." #3, Ex. B. Plaintiff's affidavit states that he received the MAA in late May or early June 2010. Regardless of what employees are told regarding an arbitration agreement, an employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer established that the employee received notice of its arbitration policy and accepted it. *In re Halliburton Co.*, 80 S.W. 3d at 568 (*citing Hathaway*, 711 S.W. 2d at

---

[3] In essence the *Davidson* court found that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate by cancelling or modifying the agreement to arbitrate. This Court observes that the *Davidson* court found that the reciprocal promises to waive the right to litigation and submit all employment disputes to binding arbitration, which constituted adequate consideration and were found sufficient in *Halliburton* and *Hathaway*, were insufficient in the case before it because at the end of the agreement was the statement, "The Company reserves the right to unilaterally abolish or modify any personnel policy without prior notice." *Id.* at 228-29.

The case before this Court is distinguishable in that the MAA specifically states, "This Agreement shall survive the termination of my employment and can only be revoked or modified by a writing signed by the Parties."

229. "'To prove notice, an employer asserting modification must prove that he unequivocally notified the employee of definite changes in employment terms.'" *Id., citing id*. "[W]hen an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Id., citing id. See also In re Dillard Department Stores, Inc.*, 198 S.W. 3d 778, 780 (Tex. 2006)(holding that the absence of a signed agreement is not an obstacle to enforcement of the arbitration agreement).[4] Luby's has demonstrated, and Plaintiff's response reflects, that Plaintiff received ample notice of the EDRP and MAA and continued his employment with knowledge of the changes.

As for Plaintiff's claim there is no mutuality of obligation, the first sentence of the MAA states in plain language, "This Mutual Agreement to Arbitrate ("Agreement") is for the purpose of resolving claims by arbitration **and is mutually binding upon both me and my employer Luby's Inc. and Luby's Restaurant Limited**

---

[4] Echoing *Halliburton* and *Hathaway*, the Texas Supreme Court opined,

> An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received notice of its arbitration policy and accepted it. Notice is effective if it unequivocally communicates to the employee definite changes in the employment terms. If the employee received notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law. [citations omitted]

**Partnership** (emphasis added)." Luby's agreed to be bound in exchange for Plaintiff's agreement to be bound. As for the exclusion of employees involved in a "current lawsuit" against Luby's, at the time MAA was introduced, Plaintiff was not involved in any such "current lawsuit."[5] Furthermore the June 11, 2010 deadline is not a date of revocation, but Human Resources' implemented deadline. Nothing in any document supplied by Plaintiff establishes that the MAA would not be enforceable after June 11, 2010.

Finally, in May 2010, Plaintiff received a memorandum from Luby, paragraph 7 of which explains the method by which all employees were to demonstrate a refusal to sign the MAA and which states, "If an employee requests not to sign [the EDRP and MAA]-they are to handwrite:  they refuse, on each form and sign their name." #8, Gerukos Aff., Ex. A at § 3, and Ex. B at ¶7, Luby's Implementation Memorandum. Plaintiff failed to handwrite "refuse" on each form and sign and return it to inform Luby's that he desired not to be bound. Therefore, under the terms of the MAA, the MAA became binding five days after he received it, and the June 11, 2010 deadline was moot.

### Plaintiff's First Supplemental Response (#9)

Insisting his consent to arbitrate cannot be obtained by

---

[5] The instant action was filed on July 12, 2011 in the 61st Judicial District Court of Harris County, Texas and removed to this Court on August 12, 2011.

stealth, coercion or confusion, Plaintiff stands by his arguments. He emphasizes that he was not tendered the "How to Implement New Policy" May 10, 2010 Memorandum, referenced in Gerukos' affidavit (#9, Ex.2), which stated in ¶ 7, "If an employee requests not to sign--they are to handwrite:  they refuse, on each form and sign their name."  Because he was not given Exhibit 2, he did not know that Defendant required him to reject the arbitration agreement by writing "rejected" on it.

Plaintiff maintains that the terms of the MAA show that Defendant intended the acceptance of the agreement to be expressed by signature, not by continued employment.  Managers and directors were instructed to hold meetings with the employees to ensure that they received the new policy, so mere transmittal of the memorandum was not intended to inform the employees that a new policy would be implemented and become effective within five days of receipt. Plaintiff's affidavit shows the they did not hold the required meetings and that he never witnessed or heard of such meetings being held during his employment with Luby's.

### Defendant's Reply to #9 (#10)

Charging that Plaintiff's assertion that he did not receive the memorandum when it was sent to all office and field management employees is not credible, Luby's argues that regardless, the MAA became effective by its own terms.

**Court's Decision**

The Court finds that Luby's has correctly cited the applicable law and applied it to the facts here.

The Court finds that there was a valid agreement.  Luby's did give clear notice of the company's change to mandatory binding arbitration of employment disputes.  Plaintiff's affidavit (#5, attachment) indicates that he received Luby's memorandum, the EDRP, and the MAA, and instructions to sign off and return the agreement to Luby before June 11, 2010.  In bold, conspicuous format, the agreement made clear that binding arbitration would go into effect.  Under *Halliburton* and *Hathaway*, because Plaintiff received notice of the change to binding arbitration of employment disputes and because he continued to work for Luby's, he consented to the MAA.  Moreover there was mutuality of obligation and consideration for the arbitration agreement, which was separate from Plaintiff's at-will employment agreement:  the MAA plainly and unambiguously states that it "is mutually binding on both me and my employer." #3, MAA, Ex. B, opening sentence.  The second paragraph provides, "I understand that the consideration for this Agreement is my employment, or continued employment, with the Company."  Finally, under "Miscellaneous" on the last page of the MAA, the MAA provides, "This Agreement shall survive the termination of my employment and can only be revoked or modified by a writing signed by the Parties.  *This Agreement does not alter the at-will*

-14-

*relationship between the Company and me."* Thus the agreement to arbitrate cannot be unilaterally revoked or modified, despite the fact that Plaintiff's employment is at-will.

Moreover Plaintiff's Title VII claims are an "employment dispute" and are expressly and specifically included within the scope of the MAA, i.e., "claims arising from . . . unlawful discrimination, retaliation or harassment, sexual harassment, violations of Title VII of the Civil Right Act of 1964, as amended." #3, Ex. 3, "Disputes Covered."

Thus under the second step, the Court finds that the strong federal policy favoring arbitration should be followed here.

Finally, because all of the issues raised by Plaintiff in this Title VII action must be submitted to binding arbitration under the MAA, in its discretion the Court finds this case should be dismissed. *Alford*, 975 F.2d at 1164.

Accordingly the Court

ORDERS that Luby's motion to compel arbitration is GRANTED and this case is DISMISSED without prejudice.

**SIGNED** at Houston, Texas, this  14th  day of  December , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE